UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OSWARD LUIS FELIPE PEREZ GUEDEZ,

Petitioner,

-against-

LAWRENCE CATLETTI, et al.,

Respondents.

Case No. 1:26-cv-02463 (JLR)

**MEMORANDUM OPINION AND
ORDER**

JENNIFER L. ROCHON, United States District Judge:

Petitioner Osward Luis Felipe Perez Guedez ("Perez Guedez" or "Petitioner"), who was detained by immigration authorities on or about March 2, 2026, petitions for a writ of habeas corpus under 28 U.S.C. § 2241. *See* Dkt. 1 ("Pet."). Petitioner contends that he is being improperly detained pursuant to 8 U.S.C. § 1225(b) ("§ 1225") instead of 8 U.S.C. § 1226(a) ("§ 1226") and is therefore eligible for immediate release from custody. *See id.* ¶¶ 3, 63-67, 74, 80-82. By Order entered March 26, 2026, the Court scheduled a conference for April 10, 2026, at 10:00 a.m. and directed Respondents to submit a letter by March 30, 2026, addressing, among other things, whether there is any basis to distinguish this case from *Guzman Andujar v. Francis*, No. 25-cv-09199 (JLR), 2025 WL 3215597 (S.D.N.Y. Nov. 18, 2025), and, if not, whether Respondents would consent to issuance of the writ — subject to preservation of Respondents' arguments for appeal. *See* Dkt. 6.

On March 30, 2026, Respondents filed their letter. *See* Dkt. 10. That letter states that "the Court can decide this matter without further briefing." *Id.* at 2. More specifically, Respondents concede that "[t]he instant case is not materially distinguishable from the facts and legal issues presented in the Court's decisions in *Guzman Andujar* and [*Campbell v. Almodovar*, No. 25-cv-09509 (JLR), 2025 WL 3538351 (S.D.N.Y. Dec. 10, 2025)]" and that the Court's

1

decisions in *Guzman Andujar* and *Campbell* "would control resolution of th[e] issue [of the statutory authority for Petitioner's detention] in this case if the Court adheres to its prior decisions." *Id.* The Court adheres to its decision in *Guzman Andujar* and *Campbell*. Accordingly, and in light of Respondents' concessions (even as they "reserv[e] all rights, including the right to appeal," *id*.), the Petition for the writ of habeas corpus is GRANTED.

The parties, however, disagree on the appropriate remedy here. Respondents assert that this case differs from *Guzman Andujar* and *Campbell* because "ICE made an individual assessment to detain Petitioner in light of ICE's assessment that Petitioner is a suspected gang member." *Id.*; *see also* Dkt. 10-1 ("Kim Decl.") ¶¶ 12, 14. Specifically, prior to Petitioner's rearrest and detention, both ICE's Office of the Principal Legal Advisor ("OPLA") and ICE Enforcement and Removal Operations ("ERO") identified "derogatory information in Petitioner's record" — namely "his designation as a Known Suspected Terrorist" based on his having tattoos "that are commonly associated with membership in Tren de Aragua" — and sought Petitioner's arrest given "the totality of [his] circumstances." Kim Decl. ¶¶ 12, 14. Citing that assessment, Respondents contend that a bond hearing, rather than immediate release, is the appropriate remedy. Dkt. 10 at 2. Petitioner responds that release is the appropriate remedy because the government detained Petitioner under § 1225 and has "never argued that it had exercised discretion under § 1226" in re-detaining Petitioner. Dkt. 12 at 3. As discussed below, the Court agrees with Respondents that a bond hearing is the proper remedy on the facts before this Court.

"[Section] 1226(a) and its implementing regulations require ICE officials to make an individualized custody determination." *Velesaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2020). "In the immigration context, the Supreme Court has recognized only two valid purposes

for civil detention: to mitigate the risks of danger to the community and to prevent flight." *Lopez v. Sessions*, No. 18-cv-04189 (RWS), 2018 WL 2932726, at \*10 (S.D.N.Y. June 12, 2018); *see also* 8 C.F.R. § 1236.1(c)(8).  Respondents here argue that an individualized assessment as to Petitioner's dangerousness and flight risk was made despite ICE's (incorrect) understanding that its detention of Petitioner was mandatory under § 1225(b).  *See* Dkt. 12 at 2.  The Court agrees.  Because ICE made an individualized assessment before detaining Petitioner to prioritize his detention, a bond hearing at which the government bears the burden of proving, by clear and convincing evidence, that Petitioner is a danger to the community or a flight risk is the appropriate remedy.  *See Guachambala v. Lyons*, No. 26-cv-01835 (GBD), 2026 WL 686154, at \*2 (S.D.N.Y. Mar. 10, 2026) (ordering bond hearing where the government's knowledge of petitioner's outstanding criminal charge "suggest[ed] the [g]overnment may have exercised some discretion in detaining [p]etitioner"); *see also, e.g.*, *Sharifzoda v. Orange County Jail*, No. 26-cv-02486 (KMK), 2026 WL 851378, at \*2 (S.D.N.Y. Mar. 27, 2026) (finding same and collecting cases); *cf. Guzman Andujar*, 2025 WL 3215597, at \*8 (concluding that bond hearing was not the appropriate remedy where "DHS exercised *no discretion at all*"); *Campbell*, 2025 WL 3538351, at \*12 (same).

   *Jimenez v. Joyce* serves as a helpful comparator.  No. 26-cv-00429 (AS), 2026 WL 251889 (S.D.N.Y. Jan. 30, 2026).  There, the government likewise maintained that its detention of the petitioner was mandatory pursuant to § 1225(b)(2)(A).  *See id.* at \*1.  The government nevertheless "prioritized [p]etitioner's arrest due to his criminal history and potential risk to the public."  *Id.* (citation omitted).  In light of the government's assessment, the *Jimenez* court concluded that "[c]onsistent with the treatment of individuals arrested and held for detention based on the exercise of officers' judgment under § 1226(a), the proper remedy is an

3

individualized hearing before an Immigration Judge, who can promptly address [petitioner]'s personal circumstances and any appropriate bond conditions that are proposed." *Id.* Similarly here, Respondents have submitted a declaration attesting that, notwithstanding its position that detention of Petitioner was mandatory pursuant to § 1225(b)(2)(A), an individualized assessment was conducted before detaining him. Dkt. 12 at 2; Kim Decl. ¶¶ 12, 14. Whether that assessment supports continued detention under the government's burden is a question for the Immigration Judge to determine at a bond hearing that will review that exercise of discretion.

It bears noting, though, that unlike the petitioner in *Jimenez* — and unlike the petitioners in all of Respondents' cited cases — Petitioner "does not have any criminal convictions." Pet. ¶ 34; *see also Guachambala*, 2026 WL 686154, at *2 (identifying "outstanding criminal charge for drunk driving"); *Sharifzoda*, 2026 WL 851378, at *1 (highlighting "arrest[] for a January domestic violence-related assault"); *Gomez-Ramirez v. Noem*, No. 26-cv-1860 (JPO), 2026 WL 734945, at *2 (S.D.N.Y. Mar. 16, 2026) (noting petitioner's "long arrest record, alleged serious gang affiliations, and recent convictions for vehicular-related crimes"); *Li v. Noem*, No. 26-cv-00989 (JAV), 2026 WL 366849, at *1 (S.D.N.Y. Feb. 10, 2026) (flagging "the criminal arrest preceding [p]etitioner's ICE detention"). Petitioner was also "issued his work authorization on September 10, 2024 and has [since] been working and supporting his wife and 2 children." Pet. ¶ 6. He was then separated from his family when ICE detained him at 26 Federal Plaza after Petitioner willingly reported to the building at ICE's request. *Id.* ¶¶ 6-7.

The sole basis that the government here invokes for detaining Petitioner is that he has tattoos that could suggest membership in Tren de Aragua. Kim Decl. ¶ 14. An Immigration Judge may well find that to be insufficient to meet the government's burden at the bond hearing. *See, e.g.*, *J.G.O. v. Francis*, No. 25-cv-7233 (AS), 2025 WL 3040142, at *1 (S.D.N.Y. Oct. 28,

2025) (noting Immigration Judge granted bond where "[t]he government argued that [petitioner] was a member of Tren de Aragua" given the "extremely limited information that would tend to support the allegation" (alteration adopted) (citation omitted)).  Indeed, there appear to be significant factors weighing in favor of granting bond in this case.  *See, e.g.*, *Romero v. Francis*, No. 25-cv-08112 (JGK), 2025 WL 3110459, at *3 (S.D.N.Y. Nov. 6, 2025) (ordering bond hearing and observing that "[o]n the present record, the petitioner's strong family ties, stable employment, and lack of criminal history weigh against any showing, by clear and convincing evidence, that he is a danger to the communities or a risk of flight").  However, it is not the province of this Court to evaluate the sufficiency of the government's grounds for discretionary detention following an individualized assessment.  8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review.").

Accordingly, by **April 16, 2026,** the immigration court must either (1) hold a bond hearing at which the government bears the burden of proving, by clear and convincing evidence, that Petitioner is a danger to the community or a flight risk, or (2) release Petitioner.  In determining whether to grant bond, the immigration judge shall consider the availability of alternative conditions of release; in determining the amount of any bond imposed, the immigration judge shall consider the Petitioner's ability to pay.

The conference scheduled for April 10, 2026 is hereby canceled.  The Clerk of Court is respectfully directed to CLOSE this case.

Dated: April 9, 2026
       New York, New York

SO ORDERED.

_____
JENNIFER L. ROCHON
United States District Judge

5